IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


RICHARD G. DEUTSCH,                                    CV 06-6188-MA

         Plaintiff,                          OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,


        Defendant.

    Phil Brockett
    1288 SW Simpson Ave., Suite I
    Bend, OR  97702-3196

       Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    NEIL J. EVANS
    Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

    LEISA A. WOLF
    Special Assistant United States Attorney
    Social Security Administration
    701 5th Avenue, Suite 2900 M/S 901
    Seattle, WA  98104-7075

       Attorneys for Defendant

MARSH, Judge:

## **INTRODUCTION**

Plaintiff, Richard Deutsch (Deutsch), brings this action for

judicial review of a final decision of the Commissioner of Social

Security denying his application for disability insurance

1- OPINION AND ORDER

benefits (DIB) under Title II of the Social Security Act (the
Act) and Supplemental Security Income (SSI) under Title XVI of
the Act.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  This court has
jurisdiction under 42 U.S.C. § 405(g).

Deutsch initially applied for benefits December 4, 2002, and
did not appeal his denial of February 13, 2003[1].  He instead
filed a second application October 20, 2003, alleging he became
disabled as of July 15, 2002, due to impairments of wrists and
hands caused by falling from a ladder in 1982.  Born April 27,
1958, Deutch was 44 years old on his alleged disability onset
date, with an eleventh grade education and past work as a
forklift driver, grain/farm worker and fence erector.

On July 7, 2005, an Administrative Law Judge (ALJ) conducted
a hearing regarding Deutch's second application, and on February
10, 2006, he found Deutch was not disabled within the meaning of
the Act.  The Appeals Council denied Deutch's request for review
on July 28, 2006, making the ALJ's decision the Commissioner's
final decision.  See 20 C.F.R. § 422.210(2005).

On appeal to this court, Deutch alleges the ALJ erred by (1)
posing an incomplete hypothetical question to the vocational

---

[1] In the "Statement of the Case" section of his Memorandum
Deutsch states that the first application "could have been
reopened" but the "issue was not addressed."  Since Deutsch does
not explicitly argue that his first application should have been
reopened, I need not address the exhaustion issues presented by
such a claim.

expert (VE) at the hearing; (2) failing to inquire into and resolve the conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT) and companion publications; and, (3) failing to fully develop the record.

For the reasons that follow the Commissioner's decision is affirmed and this case is dismissed.

<u>STANDARD OF REVIEW</u>

The initial burden of proof rests on the claimant to establish disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id</u>.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. <u>Andrews</u>, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

## **DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520, 416.920. The claimant bears the burden of proof at steps one through four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512, 416.912. Each step is potentially dispositive.

Here, at step one the ALJ found Deutch had not engaged in substantial gainful activity since his alleged disability onset date. <u>See</u> 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found Deutch's bilateral carpal tunnel syndrome and bilateral arthritis of the writs were severe impairments. <u>See</u> 20 C.F.R. §§ 404.1520(c); 416.920(c).

4- OPINION AND ORDER

At step three the ALJ found Deutch's impairments did not meet or equal the requirements of a listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The ALJ determined that Deutch had the residual functional capacity to perform light or sedentary work, limited by the need to avoid all bilateral fine motor manipulations and repetitive movements. See 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four the ALJ found Deutsch could not return to his past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five the ALJ found Deutsch was able to do other work, existing in significant numbers in the national economy, such as storage facility rental clerk, security guard, and surveillance system monitor. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(40(v), 416.920(g). Accordingly, the ALJ found Deutsch was not disabled during the period under review.

## DISCUSSION

**I.   The ALJ's step five finding was supported by substantial evidence and was free of legal error.**

At step five of the sequential evaluation, the Commissioner must show that the claimant can do other work which exists in the

national economy.  <u>Andrews</u>, 53 F.3d at 1043.  One way the
Commissioner can satisfy this burden is by eliciting testimony
from a vocational expert (VE) to determine whether jobs exist in
the national economy that the claimant can perform despite his
limitations and restrictions.  <u>Tacket v. Apfel</u>, 180 F.3d 1094,
1103-04 (9th Cir. 1999).

      While a VE may be used to provide more specific information
about the requirements of a particular job as it is performed in
a particular setting, the ALJ relies primarily on the Department
of Labor publication <u>Dictionary of Occupational Titles</u> (DOT)
including its companion publication, <u>Selected Characteristics of
Occupations</u> (SCO), for information about the requirements of
work.  20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(b);
DICTIONARY OF OCCUPATIONAL TITLES, U.S. DEP'T OF LABOR, OFFICE OF
ADMINISTRATIVE LAW JUDGES (4th ed. 1991)(hereinafter "DOT");
SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED
DICTIONARY OF OCCUPATIONAL TITLES, U.S. DEP'T OF LABOR,
EMPLOYMENT AND TRAINING ADMINISTRATION (1993)(hereinafter "DOT");
<u>see also</u> SSR 00-4p.  These references classify occupations by
exertional level, as defined in 20 C.F.R. §§ 404.1567 and
416.967, and by skill level, as defined in 20 C.F.R. §§  404.1568
and 416.968.

If the VE's testimony conflicts with the DOT's statement
about the requirements of a given job, the ALJ must elicit a
reasonable explanation for the conflict before relying on the VE.
See SSR 00-4p.

**A.    Hypothetical Question**

Deutch claims the ALJ should have included a math-skills
limitation in the hypothetical question, because he has a sixth-
grade math ability according to a vocational assessment test
performed in March 2005 by the Oregon Department of Human
Services.  The ALJ's failure to include this limitation was
erroneous, according to Deutsch, because the storage facility
rental clerk job requires more advanced mathematical ability.
The DOT indicates that this job requires an "M3" mathematical
development ability (See DOT at 234), while Deutsch claims his
math ability equates to an "M2."

The ALJ did not include mathematical ability limits in the
hypothetical because Deutsch's alleged math limits are not caused
by a medically determinable impairment.  Only limitations caused
by a "severe" medically determinable impairment are included in
the assessment of a claimant's residual functional capacity
(RFC), and thus, in the hypothetical question.  See 20 C.F.R. §§
404.1504, 404.1520(c), 416.904, 416.920(c).  Nevertheless, a
claimant's individual skill level is considered, at step five, in

7- OPINION AND ORDER

determining whether the claimant has any transferable skills. See 20 C.F.R. §§ 404.1568, 416.968.

In this case, the ALJ did not find that Deutsch had any transferable skills. The job of storage facility rental clerk is classified by the DOT as an "SVP 2", meaning that the job can be learned within one month, and therefore it is considered "unskilled." See "Appendix C" in DOT; see also SSR 00-4p. Thus, the ALJ could safely assume that, notwithstanding the general educational development level "M3", since the job of storage facility rental clerk is classified as "unskilled," Deutsch could learn how to do the math needed for the job in a short period of time.

In any event, even assuming, *arguendo*, that Deutsch cannot perform the job of storage facility rental clerk, the ALJ's step-five non-disability determination is still supported by substantial evidence based on the other two jobs the VE identified, as discussed below.

**B.   Vocational Expert's Testimony**

The VE listed three jobs he believed Deutsch was capable of performing: (1) surveillance system monitor; (2) storage facility rental clerk; and, (3) security guard. According to Deutsch, the VE's testimony conflicted with the DOT and SCO descriptions for

these jobs in several respects, and the ALJ erred by failing to
obtain an explanation for these conflicts.

First, Deutsch claims the VE's testimony regarding the
requirements of the job of surveillance system monitor cannot be
relied upon because the VE misstated the DOT code for the job;
the VE correctly identified the job title, but stated that the
number was 379.*684*-010, but the DOT actually lists this job at
379.*367*-010.

I do not agree that misstating the DOT code for a job that
was accurately identified by name is a conflict between VE
testimony and the DOT.  Deutsch's contention is based on
conjecture, only, as there isn't any way of knowing whether the
number stated by the VE was wrongly transcribed.  The similarity
between the number in the transcript and the actual DOT code for
surveillance system monitor, and the fact the job is consistent
with Deutsch's RFC, leads me to find a substantial basis upon
which the ALJ could adopt the VE's testimony regarding this job.

Second, Deutsch contends the VE's testimony regarding the
requirements of the job of storage facility rental clerk
conflicts with the SCO insofar as the VE testified that it could
be performed by someone "precluded from repetitive use of the
hands bilaterally or fine manipulation bilaterally."  The SCO
says this job requires frequent handling, described as

9- OPINION AND ORDER

> Seizing, holding, grasping, turning, or otherwise working
> with hand or hands.  Fingers are involved only to the extent
> that they are an extension of the hand, such as to turn a
> switch or shift automobile gears.

See "Part A" in DOT.

The ALJ found Deutsch's only work-related limitation was that he could not perform any bilateral fine motor manipulations or repetitive movements.  To the extent the VE's statement may be read to indicate Deutsch was also precluded from repetitive use of the hands, generally, it is inaccurate.  A plain reading of the handling description, which specifies that fingers are only involved as "an extension of the hand" indicates that fine motor skills are not needed to perform the job of storage facility rental clerk.  Thus, I do not agree that the VE's testimony conflicts with the DOT.

Third, Deutsch claims the VE's testimony regarding the security guard job also conflicts with the SCO, which indicates that this job also requires frequent handling.  I do not find any merit to this argument, for the same reasons I reject the previous argument.

**II.  The ALJ fulfilled his duty to develop the record.**

Deutsch represented himself at the hearing.  After the VE testified that a hypothetical person with Deutsch's RFC could work as a security guard, Deutsch stated that he believed his

hand braces would hinder his ability to perform that job.  The VE

asked how, and Deutsch made the following statement:

> Opening doors.  I'm not exactly sure what security business
> you're speaking of, but if you have to stop somebody you
> have to use your hands.  Opening things.  Pushing buttons.
> All that I have problems with.  As I say, sometimes it's
> just a chore for me to get dressed.  And that's just in the
> morning.  And on medications, the drowsiness takes effect.
> I've noticed that more recently that I have in the past, but
> then I've been taking these more consistently as far as
> prescriptions go.  Now, when I was prescribed an Indocet in
> Pennsylvania, it really killed the pain but it also inhibits
> your ability to – – I'd say, as far as – I don't know how to
> explain that.  Like reaction to something that's coming at
> you.  It slows your coordination down maybe.  A then the
> stuff I'm on now, I'm not really sure – – I know that the
> first prescription I was almost finished with, I explained
> to that woman there, that doctor, the drowsiness I noticed
> more.  And stuff like that.  And I don't see how I could be
> an effective security guard if I'm asleep all the time.  And
> I'm very easily agitated any more.  I mean, I don't want to
> bring my father in, but my mother can tell you that.  She's
> more vocal than he is.  And stuff like that, I think, has
> lot to do working [sic] in places.

The ALJ told the VE he was not required to respond to Deutsch

because he didn't consider the above to be a question.

Deutsch now argues that the ALJ erred by failing "to elicit

from the VE a reasonable explanation of the points raised by Mr.

Deutsch or to develop other facts and arguments germane to the

vocational evidence."  Deutsch cites a number of cases and

regulations to support this claim, the most persuasive of which

is Widmark v. Barnhart, 454 F.3d 1063, 1068-69 (9th Cir. 2006).

The court in Widmark restated the rule from Brown v.

Heckler, 713 F.2d 441, 443 (9th Cir. 1983), that the ALJ has an

extra duty to ensure the record is fully and fairly developed

when a claimant is unrepresented.  454 F.3d at 1068-69.  However, as a general rule, "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  <u>Mayes v. Massanari</u>, 276 F.3d 454, 459-60 (9th Cir. 2001).

This duty was not triggered here, where the ALJ would not have been required to adopt the VE's testimony in response to Deutsch's statement, because it would have been based on unreliable, unsubstantiated subjective reports.  The ALJ properly discredited Deutsch's subjective reporting – a finding Deutsch does not contest.  Neither does Deutsch rebut the ALJ's finding that he failed to follow prescribed medical treatment that would likely restore the functionality of his hands, such as carpel tunnel release surgery.  Thus, I do not find any merit to the contention that the ALJ had a duty to more fully develop unreliable testimony.

<u>**CONCLUSION**</u>

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 6__ day of April, 2007.

                    ___/s/  Malcolm F. Marsh_____
                    Malcolm F. Marsh
                    United States District Judge

12- OPINION AND ORDER